IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Trehel Corporation, | ) | C/A No. 8:21-cv-01962-DCC |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| National Fire and Marine Insurance Company; First Specialty Insurance Corp.; Frankenmuth Mutual Insurance Company; Employers Insurance Company of Wausau; Liberty Mutual Fire Insurance Company; Navigators Specialty Insurance Company; Peleus Insurance Company; Nationwide Mutual Fire Insurance Company; Atain Specialty Insurance Company f/k/a/ USF Insurance; Selective Insurance Company of South Carolina; American Guarantee and Liability Insurance Company; Carl Catoe Construction, Inc.; Environmental Materials, LLC d/b/a Environmental Stoneworks; P&L Enterprises, LLC, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

This matter is before the Court on Defendant Selective Insurance Company of South Carolina's ("Selective") Motion to Dismiss. ECF No. 60. Plaintiff Trehel Corporation ("Trehel") filed a Response in Opposition. ECF No. 64. For the reasons set forth below, the Court grants in part and denies in part Selective's Motion to Dismiss.

## BACKGROUND

This case is an insurance coverage dispute arising out of an underlying construction defect action (the "Underlying Action") filed in the Anderson County Court of Common Pleas.[1]  In the Underlying Action, Trehel, along with Defendants Carl Catoe Construction, Inc.; Environmental Materials, LLC d/b/a Environmental Stoneworks; and P&L Enterprises, LLC ("P&L") (collectively, "Subcontractor Defendants") have been sued for alleged defects in the construction of a condominium development, Overlook Condominiums, located in Anderson, South Carolina.  ECF No. 1-1 at 7.  Defendants National Fire and Marine Insurance Company, First Specialty Insurance Corp., Frankenmuth Mutual Insurance Company ("Frankenmuth"), Employers Insurance Company of Wausau, Liberty Mutual Fire Insurance Company, Navigators Specialty Insurance Company, Peleus Insurance Company, Nationwide Mutual Fire Insurance Company, Atain, Selective Insurance Company of South Carolina, and American Guarantee and Liability Insurance Company (collectively, "Insurer Defendants") were not named as defendants in the Underlying Action.

---

[1] *Overlook Horizontal Property Regime Homeowner's Association, Inc. and Kenneth Cochran and Miki Cochran, on behalf of themselves and other similarly situated v. Trehel Corporation; Outerbanks of Lake Hartwell; Signature Architects, LLC; Environmental Materials, LLC d/b/a Environmental Stoneworks; John Does 2–20; Carl Catoe Construction, Inc. n/k/a Ellis Homes, LLC; Builders Firstsource Southeast Group, LLC; P&L Enterprises, LLC; Diego Avalos-Rojas; Iris Morales; Marco Antonio Hernandez Vidales; Gerardo Ochoa Munoz; Valentin Morales Jimenez; Tabares Incorporated; Adan Castro; Herberto Aureo Arcos Hernandez a/k/a Herblio Arcos Hernandez; Delfino Jacobo Mares; Delfino Construction; Ambrosio Martinez-Ramirez a/k/a Ambrocio Martinez-Ramirez; Javier Francisco Zarate a/k/a Francisco Javier Zarate d/b/a Zarate Construction; Luis Sierra a/k/a Luis Lopez Sierra; Sergio Vargas; Rodolfo Cruz; VMS Construction; Martin's Roofing; Jamie Padilla; John Does 38–40; and John Does 41–50,* Civil Action No. 2018-CP-04-01787, pending in the Court of Common Pleas, Anderson County, South Carolina.

On May 27, 2021, Trehel filed this action in state court against Insurer Defendants and Subcontractor Defendants seeking coverage under Subcontractor Defendants' insurance policies issued by Insurer Defendants (the "Coverage Action"). ECF No. 1-1. In its Complaint, Trehel alleges that each of the Subcontractor Defendants entered into a subcontract with Trehel to perform certain work on the Overlook Condominium project, and the subcontract required the Subcontractor Defendants to "[m]aintain commercial general liability insurance coverage . . . [n]ame Trehel as an additional insured on the insurance policies [and] [d]efend, indemnify and hold harmless Trehel with respect to any claims asserted against it arising out of the work on the [p]roject." ECF No. 1-1 at 7. Trehel alleges causes of action against all Defendants for a declaratory judgment, breach of contract, bad faith, and indemnity/contribution. *Id.* at 7–10.

On June 30, 2021, Frankenmuth removed the Coverage Action to this Court. ECF Nos. 1. At the time of removal, complete diversity of the parties did not exist;[2] thus, Frankenmuth moved to realign the Subcontractor Defendants as Plaintiffs, and Trehel moved to remand the case to state court. ECF Nos. 4, 26. This Court granted Frankenmuth's Motion to Realign and denied Trehel's Motion to Remand. ECF No. 67.

Thereafter, Selective filed a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) on October 4, 2021. ECF No. 60. Trehel filed a Response in Opposition on October 28, 2021. ECF No. 64. The Motion is now before the Court.

---

[2] Carl Catoe Construction, Inc., is a corporation organized and existing pursuant to the laws of the State of South Carolina and conducted business in Anderson County, South Carolina. ECF No. 1-1 at 6. P&L and Environmental Stoneworks are limited liability companies organized and existing pursuant to the laws of the State of Delaware and conducted business in Anderson County, South Carolina. *Id.*

3

**APPLICABLE LAW**

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits the dismissal of an action if the complaint fails "to state a claim upon which relief can be granted." Such a motion tests the legal sufficiency of the complaint and "does not resolve contests surrounding the facts, the merits of the claim, or the applicability of defenses . . . . Our inquiry then is limited to whether the allegations constitute 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (internal quotation marks and citation omitted). In a Rule 12(b)(6) motion, the Court is obligated to "assume the truth of all facts alleged in the complaint and the existence of any fact that can be proved, consistent with the complaint's allegations." *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). However, while the Court must accept the facts in a light most favorable to the nonmoving party, it "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Id*.

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the complaint must state "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although the requirement of plausibility does not impose a probability requirement at this stage, the complaint must show more than a "sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint has "facial plausibility" where the pleading "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

**DISCUSSION**

**I. The Policies**

Selective issued two insurance policies to P&L, one of Trehel's subcontractors on the Overlook Condominium Project, as the sole named insured, effective from September 2009 to September 2013, and from September 2013 to September 2019, respectively. ECF Nos. 60 at 2; 60-2 (Exhibit A, Part 1 – Policies); 60-3 (Exhibit A, Part 2 – Policies); 60-4 (Exhibit A, Part 3 – Policies). The policies provide that Selective "will pay those sums that the insured becomes legally obligated to pay as damages because of . . . 'property damage' to which this insurance applies. [Selective] will have the right and duty to defend the insured against any 'suit' seeking those damages." ECF No. 60-2 at 53. The policies state that the "insurance applies to . . . 'property damage' only if (1) The . . . 'property damage' is caused by an 'occurrence' that takes place in the 'coverage territory'; (2) The . . . 'property damage' occurs during the policy period; and (3) Prior to the policy period, no insured . . . knew that the . . . 'property damage' had occurred, in whole or in part." *Id.* The policies define "property damage" as "[p]hysical injury to tangible property, including all resulting loss of use of that property" and "[l]oss of use of tangible property that is not physically injured." *Id.* at 68.

Generally, contractual liability for damages is excluded from coverage under the policies, unless such liability for damages is

> [a]ssumed in a contract or agreement that is an "insured contract," provided that the . . . "property damage" occurs subsequent to the execution of the contract or agreement. Solely for purposes of liability assumed in an "insured contract," reasonable attorney fees and necessary litigation expenses incurred by or for a party other than the insured are

5

> deemed to be damages because of . . . "property damage," provided:
>
> (a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract'"; and
>
> (b) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

*Id.* at 54. The policies define "insured contract" as

> [t]hat part of any other contract or agreement pertaining to your business . . . under which you assume the tort liability of another party to pay for . . . "property damage" to a third person or organization.

*Id.* at 66.

In addition, the policies include a Supplementary Payments Provision, which states in part:

> If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit," we will defend that indemnitee if all of the following conditions are met:
>
> a. The "suit" against the indemnitee seeks damages for which the insured has assumed liability of the indemnitee in a contract or agreement that is an "insured contract";
>
> b. This insurance applies to such liability assumed by the insured;
>
> c. The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";
>
> d. The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee; [and]

6

> e. The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee . . . .

*Id.* at 98–99.

Moreover, an automatic additional insured endorsement amends the policies "to include as an additional insured any person or organization for whom you are performing operations when you and such person have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy." *Id.* at 69.  The endorsement further states that "[s]uch person or organization is an additional insured only with respect to liability for . . . 'property damage' . . . caused, in whole or in part, by: 1. Your acts or omissions; or 2. The acts or omissions of those acting on your behalf; in the performance of your ongoing operations for the additional insured." *Id.*

However, "[a] person's or organization's status as an additional insured under this endorsement ends when your operations for that additional insured are completed." *Id.* Under the policies, work is "deemed completed at the earliest of the following times: (a) When all of the work called for in your contract has been completed; (b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site; (c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project." *Id.* at 107.  The policies also include an additional insured endorsement for completed operations, which lists specific named additional insured organizations and does not include Trehel. *Id.* at 41.

Finally, the policies provide a Blanket Completed Operations endorsement that

> include[s] as an additional insured any person or organization you have agreed in a written contract, written agreement, or written permit to add as an additional insured on your policy, but only with respect to their liability arising our of "your work" performed under that contract, agreement, or permit and included in the "products-completed operations hazard" when that contract agreement or permit requires the additional insured be added with respect to liability arising out of "your work" performed under that contract, agreement, or permit and included in the "products-completed operations hazard."[3]

ECF No. 60-9 at 2.[4] However, the coverages provided in the endorsement "do not apply unless the written contract or written agreement has been executed (executed means signed by the named insured) or written permit issued prior to the . . . 'property damage' . . . ." *Id.*

---

[3] The products-completed operations hazard

> [i]ncludes all . . . "property damage" occurring away from premises you own or rent and arising out of . . . "your work" except: . . . (2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times: (a) When all of the work called for in your contract has been completed; (b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site; (c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

ECF No. 60-2 at 195.

[4] The endorsement cited is dated from 2014. The ElitePac Extension dated from 2009 "includes as an additional insured any person or organization with whom you have agreed in a written contract, written agreement or written permit that such person or organization be added as an additional insured on your policy." ECF No. 60-6 at 2. This extension pertains only to ongoing operations and does not provide for additional insureds for completed operations. *Id.*

## II. Theories for Insurance Coverage

### A. Additional Insured

Selective contends that Trehel is not an additional insured under the policies because the subcontract was not signed by a P&L representative, and therefore, it was not executed by the named insured. ECF No. 60 at 12. Selective further argues that the automatic additional insured endorsement and the additional insured ElitePac endorsement only provide coverage for ongoing operations. *Id.* at 13. Because the condominium project was completed between 2005 and 2006, Selective claims the endorsements do not provide coverage. *Id.* Selective also asserts that Trehel cannot receive coverage as an additional insured under the completed operations endorsement because Trehel is not specifically named on the endorsement. *Id.* at 14. Moreover, Selective maintains that although the Blanket Completed Operations endorsement provides coverage for completed operations, the provision requires the additional insured to have entered into a written agreement or contract with the named insured that was signed and executed by both parties. *Id.* at 15. Because the subcontract alleged in this case was not signed by a P&L representative, Selective contends Trehel cannot claim coverage under the endorsement. *Id.*

In contrast, Trehel argues that its subcontract with P&L specifically required P&L to name Trehel as an additional insured in its insurance policies for its work on the Overlook Condominium Project. ECF No. 64 at 10. Trehel claims that because P&L agreed in writing in the subcontract that Trehel would be added as an additional insured on P&L's policies, Trehel qualifies as an additional insured under the policies. *Id.* In addition, Trehel contends that it qualifies for coverage as an additional insured under the

Blanket Completed Operations endorsement because Trehel and P&L entered into a written, signed agreement—the Change Order No. #1 form to the subcontract—prior to the property damage at issue in the underlying litigation. *Id.* at 14.

Having reviewed the arguments and submissions of the parties, the Court finds Trehel has sufficiently alleged that it previously qualified as an additional insured under the automatic additional insured endorsement. Because the parties entered into a subcontract in which P&L agreed to add Trehel as an additional insured on the policies, Trehel satisfied the policies' requirements to be added as an additional insured. However, because Trehel's status as an additional insured ended upon completion of the condominium project under the plain terms of the endorsement, Trehel cannot currently claim coverage under this theory. Similarly, Trehel cannot claim coverage under the ElitePac Extension endorsement because it applies only to ongoing operations. Although the policies contain another endorsement providing additional insured coverage for completed operations, the endorsement applies only to those persons or organizations specifically listed on the form. Because Trehel is not listed, it cannot qualify for this coverage. Accordingly, Selective's Motion to Dismiss is granted as to these theories of recovery.

However, the Court denies Selective's Motion to Dismiss as to the Blanket Completed Operations endorsement. The Court finds that because Trehel has sufficiently alleged the existence of a subcontract between Trehel and P&L, and P&L's work on the condominium project has been completed, Trehel has satisfied the requirements to be added as an additional insured under this endorsement. Although the endorsement specifically requires that P&L execute the subcontract by signing it in order for Trehel to

qualify for coverage, the Court finds that the Change Order No. # 1 form signed and executed by representatives of both Trehel and P&L on May 5, 2006, after having entered into the subcontract, incorporates the subcontract by reference by indicating the original subcontract number and date, noting that the change order became part of the subcontract documents upon full execution, and stating that all work performed under a change order is subject to the terms and conditions of the original subcontract. *See Stevens Aviation, Inc. v. DynCorp Int'l LLC*, 715 S.E.2d 655, 659 (S.C. Ct. App. 2011) ("To incorporate the terms of extrinsic material, a contract need not use 'magic words.' However, the contract 'must explicitly, or at least precisely, identify the written material being incorporated and must clearly communicate the purpose of the reference is to incorporate the referenced material into the contract (rather than merely to acknowledge that the referenced material is relevant to the contract, e.g., as background law or negotiating history).'" (internal citations omitted)). Accordingly, Selective's Motion to Dismiss is denied as to this theory of recovery.

### B. Insured Contract

Selective contends that Trehel cannot receive coverage as a contractual indemnitee because there is no signed, executed subcontract between Trehel and P&L to entitle Trehel to coverage under an insured contract. ECF No. 60 at 16. Selective relies on the definition of "executed" set forth in the Blanket Completed Operations endorsement to require that the subcontract must have been signed by a P&L

representative to be executed in order to constitute an insured contract under the policies.[5]  *Id.*

On the other hand, Trehel contends that the subcontract between it and P&L qualifies as an insured contract because it includes insurance requirements whereby P&L would assume Trehel's tort liability arising from its work on the condominium project as well as indemnifying Trehel for its liabilities, losses, and expenses (including attorney's fees) arising out of P&L's work.  ECF No. 64 at 11–13.  Trehel also alleges that the subcontract was executed at the time P&L began working on the project and before any property damage occurred.  *Id.* at 13.  Therefore, Trehel claims the subcontract was executed at the time of mutual assent, which would have been at the time P&L began performing the work.  *Id.*  In addition, Trehel argues that P&L signed and executed the Change Order No. # 1 form after mutual assent, further supporting the fact that an executed subcontract existed prior to any property damage occurring.  *Id.*

Having reviewed the arguments and submissions of the parties, the Court finds that Trehel has sufficiently alleged the existence of a subcontract between Trehel and

---

[5] In addition, Selective argues that under the Supplementary Payments provision of the policies, Trehel does not meet the qualifications for contractual indemnity coverage. ECF No. 60 at 19.  Specifically, Selective contends the lack of any insured contract bars coverage.  *Id.* at 21.  Selective also claims the express conditions under that provision have not been met.  *Id.* at 20–22.  For example, Selective asserts there is a conflict between Trehel and P&L such that Selective cannot defend both parties, and even if no conflict exists, there is no agreement between Trehel and P&L to share counsel.  *Id.* at 21.  As discussed further below, the Court finds Trehel has sufficiently alleged the existence of an insured contract.  Moreover, this Court has previously determined that the interests of Trehel and P&L are the same in this litigation such that realignment of P&L and the other Subcontractor Defendants as Plaintiffs was warranted.  ECF No. 67 at 7. Accordingly, the Court finds Selective's arguments unpersuasive.  Further, the conditions listed in the provision arguably have not been triggered.  Therefore, Trehel's purported failure to meet those conditions before now does not prevent Trehel from claiming coverage and defense from Selective.

P&L and has also sufficiently alleged that the subcontract satisfies the requirements for coverage as an insured contract under the policies.  The Court agrees with Trehel that the fact that a P&L representative did not sign the subcontract does not render it unenforceable.  Indeed, Selective does not dispute that P&L performed the duties of a subcontractor for Trehel on the condominium project.  Thus, the Court finds P&L sufficiently executed the subcontract through its performance of work on the project for purposes of qualifying as an insured contract under the policies.[6]  *See M.B. Kahn Constr. Co. v. Crain*, 71 S.E.2d 503, 504 (S.C. 1952) ("Moreover, 'executed' as applied to a contract ordinarily means one which has been fully performed[.]").  The Court also notes that Trehel signed the subcontract on September 19, 2005, which confirms that it was executed prior to any alleged property damage, as required by the policies.  Moreover, the subcontract imposes insurance and indemnification requirements on P&L for tort liability arising from its work on the condominium project.  Therefore, the Court finds Trehel has sufficiently alleged the existence of a contract to qualify for coverage pursuant to an insured contract under the policies.  Accordingly, Selective's Motion to Dismiss is denied as to this theory of recovery.

---

[6] The Court notes that the definition of "executed" as "signed by the named insured and additional insured" appears only in certain endorsements (i.e., coverage extensions) to the policies, including the Blanket Completed Operations endorsement, and is not otherwise mentioned or defined in the policies generally.  ECF No. 60-6 at 2.  For example, the Blanket Completed Operations endorsement states, "[t]he provisions of *this coverage extension* do not apply unless the written contract or written agreement has been executed (executed means signed by the named insured and additional insured) . . . ." *Id.* (emphasis added).  Accordingly, under the plain language of the endorsement, the Court finds the requirement of a signature for execution applies only to the coverage extension and not to the policies as a whole.

13

## **CONCLUSION**

For the reasons set forth above, Selective's Motion to Dismiss [60] is **GRANTED IN PART AND DENIED IN PART**.

IT IS SO ORDERED.

                                                s/ Donald C. Coggins, Jr.
                                                United States District Judge

August 19, 2022
Spartanburg, South Carolina